Thomas Foley
Brian L. Grossman
**SHIPKEVICH PLLC**
165 Broadway, Suite 2300
New York, New York 10006
Telephone:     (212) 252-3003
Facsimile:      (888) 568-5815
tfoley@shipkevich.com
bgrossman@shipkevich.com
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **DEBORAH TAYLOR a/k/a HOLLY T, MATTHEW KRAMER a/k/a DISCO KILLERZ, and REEM TAOZ a/k/a GATTÜSO,** <br><br> Plaintiff, <br><br> - against – <br><br> **JANE DOE,** <br><br> Defendants. | Case No.: <br><br> **COMPLAINT** <br><br> **PLAINTIFFS DEMAND A TRIAL BY JURY** |

Plaintiffs Deborah Taylor a/k/a Holly T ("Taylor"), Matthew Kramer a/k/a Disco Killerz[1] ("M. Kramer"), and Reem Taoz a/k/a GATTÜSO ("Taoz" together with Taylor and Kramer the "Plaintiffs")), by their attorneys Shipkevich PLLC, hereby allege as follows:

## INTRODUCTION

1. This case arises out of Defendant Jane Doe's ("Doe") defamatory postings in regards to Plaintiffs on a website called "Medium".

---

[1] Disco Killerz is a duo but only one member herein has brought suit on behalf of the Disco Killerz.

1

2. Plaintiffs are all musical artists that rely on their music to earn income and to make a living.

3. Doe posted two separate articles on Medium claiming that Plaintiffs were "corrupt", being "illegally hook[ed] up" as artists, referring to a "con artist manager", and a "circle of corruption."

4. Doe also indicated in those posts that there were other posts made about Plaintiffs on different Internet platforms, including but not limited to Twitter.

5. These defamatory posts have already harmed the Plaintiffs and will continue to harm the Plaintiffs until such time as Doe is identified and ordered to cease making any and all defamatory remarks against the Plaintiffs.

## PARTIES

6. Plaintiff Deborah Taylor a/k/a Holly T is a natural person that is domiciled in New Jersey, where she resides with an intent to stay indefinitely.

7. Plaintiff Matthew Kramer a/k/a Disco Killerz is a natural person that is domiciled in New York, where he resides with an intent to stay indefinitely.

8. Plaintiff Reem Taoz a/k/a GATTÜSO is a natural person that is domiciled in New Jersey, where she resides with an intent to stay indefinitely.

9. Defendant Jane Doe is a natural person with an unknown domicile. Defendant Jane Doe is known only to Plaintiffs by the following Medium account names: @kitttykat97, @kitttykat, @Edmnation2020 and @Edmnation (the "Medium Accounts"). Upon information and belief, the Medium Accounts are all owned and operated by a single person. Upon information and belief Jane Doe may be a female citizen of Florida based on a statement in one of the articles that

Jane Doe published, which stated "I'm a bottle waitress…or WAS a bottle waitress at LIV in Miami."

## JURISDICTION AND VENUE

10. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because complete diversity exists between Plaintiffs on their side, who are citizens of New Jersey and New York, and Defendant, who's citizenship is unknown. The amount in controversy exceeds $75,000 exclusive of costs and interest.

11. Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this district.

## STATEMENT OF FACTS

*The Plaintiffs*

12. The Plaintiffs are all successful musical artists, primarily within the electronic dance music ("EDM") genre.

13. Plaintiff Taylor has a Spotify page that has over 200,000 monthly listeners and has been on Spotify since at least 2018.

14. Plaintiff M. Kramer has a Spotify page that has over 450,000 monthly listeners and has been on Spotify since at least 2015.

15. Plaintiff Taoz has a Spotify page that has over 6,000,000 monthly listeners and has been on Spotify since at least 2018.

16. By way of comparison only, The Beatles have just under 23,000,000 monthly listeners, Led Zeppelin has just over 13,500,000 monthly listeners, Drake has almost 59,000,000 monthly listeners, and Ludacris has over 5,300,000 monthly listeners.

17. Spotify defines "monthly listeners" on its website as "unique listeners who play your music during a 28-day period."

18. Because of how Spotify defines monthly listeners, the more music a particular artist has on Spotify, the more likely their number of monthly listeners will increase.

19. While Plaintiffs are successful, they are not yet at the level of prominence synonymous with those at the top of the music industry, but their presence on Spotify is an integral aspect of their professional careers.

20. Each of the Plaintiffs has worked with at least one of the other Plaintiffs to collaborate on music that they have released to the public together in an effort to further their respective careers.

*The Medium Accounts*

21. On or about March 22, 2020, the Medium Accounts posted two separate articles on Medium titled "Spotify Corruption and EDM" posted by @kitttykat97 (a/k/a @kitttykat) and "Spotify Corruption & Austin Kramer vs EDM posted by @Edmnation2020 (a/k/a @Edmnation) (the "Defamatory Articles").

22. The Defamatory Articles were posted on a website called "Medium" with the URL https://medium.com/@kitttykat97/spotify-corruption-and-edm-756557c7503 and https://medium.com/@edmnation2020/spotify-curruption-austin-kramer-vs-edm-8f8f90a53bbd, both of which have since been removed following communications by Plaintiffs with Medium and were not removed by the original poster of the Defamatory Articles.

23. Medium is a website that is "an open platform for authentic voices to share their thoughts and experiences, and through conversation move us towards greater understanding."

24. Medium boasts that it is for "All types of thinkers, writers, and storytellers [to] find their home on Medium, with stories covering every topic under the sun. So if you have an idea to share respectfully, it's welcome to be published to the member community."

25. The Defamatory Articles have since been removed from Medium and there has been correspondence between Plaintiffs' counsel and Medium's Legal Department attempting to ascertain the subscriber information and identity of the accounts responsible for the postings.

26. However, Medium, citing internal policy, refused to provide Plaintiffs with the account information, including the name(s) associated with the accounts, that corresponded to the Medium Accounts until Plaintiffs sent Medium a "duly issue[d] subpoena."

*The Defamatory Articles*

27. The Defamatory Articles contained statements that are materially false and designed to harm the Plaintiffs.

28. The defamatory statements include attacking Taylor: "[Austin] Kramer[2] has a group of young aspiring singers that are all looks and no vocals. He has his secret hang outs with them (like Holly T) & tries to impress them by letting them make up his Friday night Cratediggers playlist."

29. Defendant made further untrue statements that at least Plaintiff Taylor and [Austin] Kramer, ". . . also sit there and talk sh*t [sic] about artists that they don't like, not their music, but a particular artists personality or the way they dress. I wonder what it's like to abuse and play such a high power. 'This artist didn't say hi to me at the last event so let's not play his records anymore.'"

---

[2] Austin Kramer is the Global Head of Dance & Electronic Music at Spotify and has no relation to Matthew Kramer, one of the Plaintiffs in this action. [Austin] has been inserted into quotations where necessary and M. Kramer is used for the Plaintiff in an effort to distinguish between these two unrelated individuals.

30. Defendant further defamatorily stated "Let's talk about this corruption circle of artists that I researched. Gatusso, Disco killers [sic], & Holly T (just to name a few because these are the worst) are making the covers of the hottest dance Spotify playlists time and time again & making it to the #1 position on these curated lists over and over. [Austin] Kramer is laughably keeping these no name artists in these positions while passing up on our favorite A-list artists and the up and coming artists with REAL buzz and REAL fans."

31. Defendant alleged that there was some sort of corruption by stating that "[Austin] Kramer added Holly T and the disco killers [sic] again this week over dozens of artists I like . . . Why? I'll tell you why…[sic] Let's count the money involved; do the math. Holly T's last record "Free", was put out on her own bootleg label, Holly T Records & currently has over 1 million streams (1 Million streams is what, give or take around $5000.00??)"

32. Taylor's record was not "put out" on "her own bootleg label" but, rather, was released on a third-party, internationally known record label that has previously released hundreds of top-performing EDM records from some of the top artists in the world over a span of years.

33. Continuing, Defendant turned to Taoz and M. Kramer: "This no named DJ Gattuso has millions of plays, yet he and his management beg for gigs & offer to play for free and still can't get gigs! . . . Hopefully Gatussos [sic] family fortune doesn't run out because his con artist manager has a track record of only surrounding himself with wealthy test tube crap artists & stays with them until he sucks them dry of all their funds and then moves to his next victim. All to pay his own bill's [sic] and support his own music career; yes, his manager has a music career. Gatusso is managed by the Disco Killers [sic] (who you probably haven't heard about, but you guessed it, they also have millions of streams)."

34. Indeed, Taoz is not represented by M. Kramer (or anyone else associated with Disco Killerz) for "gigs" or live performances but, rather, Taoz is represented by William Morris Endeavor ("WME"), a prominent agency that represents music artists, athletes, and actors, including but not limited to Ben Affleck, Joaquin Phoenix, Whitney Houston, Foo Fighters, and Serena Williams, to name a few. WME's representation of Taoz is prominently displayed on the "Contact" page of his website (https://gattusomusic.com/contact-us/). M. Kramer does not represent Taoz for "gigs".

35. Defendant outright states that Plaintiffs are using tactics to falsely inflate the number of streams they receive on platforms, "So, 100 million + Spotify listeners listen to [Gatusso] songs…and only 2–5 go like his posts of [sic] Facebook? Yeah, I don't think so. I'm just going to go out on a limb and call B***S***…AGAIN. The same goes for the Disco Killers [sic] and Holly T."

36. Indeed, Taoz and M. Kramer have been featured together on Billboard Music and Mediabase, Taoz has separately had three records in the same year featured, Taylor is played on iHeart Radio, and all of the Plaintiffs work with Apple Music, Amazon Music, and Pandora, in addition to Spotify.

*Contact with Medium*

37. Following the publication of Doe's Defamatory Articles, counsel for Plaintiffs twice wrote to Medium requesting that Medium provide Plaintiffs with the account information for the authors of the Defamatory Articles, which had already been taken down as a result of Plaintiffs' previous direct communication with Medium.

38. Medium agreed to take down the Defamatory Articles but refused to turn over the information for the author of the Defamatory Articles without a subpoena.

39. Medium also informed Plaintiffs that it has already saved the information related to the Defamatory Articles and the author(s) of those Defamatory Articles.

40. Once Plaintiffs initiate this action, Plaintiffs intend to immediately subpoena Medium for the information of the author(s) of the Defamatory Articles, including but not limited to the real name(s) of the author(s) of the Defamatory Articles.

41. Once Plaintiffs receive a response from Medium, Plaintiffs will duly seek to amend this Complaint in order to include the real name of Doe.

**FIRST CAUSE OF ACTION**
(Defamation Per Se)

42. Plaintiffs repeat and reallege the allegations in Paragraphs 1 through 41 as if fully contained herein.

43. All of the statements made by Doe and plead herein are false as to the Plaintiffs.

44. Doe published these statements on Medium, where everyone in the world has access to the statements, and specifically targeted those involved in the electronic dance music sub-culture, through the titles of the articles, where Plaintiffs earn a living.

45. Upon information and belief, Doe also assisted in the widespread dissemination of the Defamatory Articles within the EDM sub-culture.

46. Plaintiffs have received numerous phone calls, text messages, and emails from colleagues and friends within the EDM industry informing Plaintiffs that the Defamatory Articles were sent to them. Indeed, upon information and belief, Doe intentionally disseminated the Defamatory Articles in order to create as much awareness and damage as possible.

47. The dissemination of the Defamatory Articles has already caused Plaintiffs irreparable harm in that M. Kramer and Taylor's most recently released joint record's performance

has been harmed because Dance Radio has expressed concerns to Plaintiffs over the Defamatory Articles and has been unwilling to play the record as frequently due to the allegations in the Defamatory Articles. Dance Radio's refusal to embrace the record as it normally would has created a direct and significant impact on the revenue that will be generated by the record, which is separate and apart from any revenue generated on Spotify.

48. Doe is aware that the statements are false, or at a minimum does not have any reasonable basis to believe that the statements are true.

49. Does based the statements off of rumors that Doe heard from others, on Twitter, Doe's own animus that Doe has created towards the Plaintiffs, Plaintiffs' music, and Plaintiffs' success in the industry.

50. Upon information and belief, Doe conducted no independent research on whether Doe's claims were in fact true except for reviewing the number of listeners to Plaintiffs' music on various platforms, including but not limited to Spotify and Soundcloud.

51. Upon information and belief, Doe did not research how certain platforms count the number of listeners to a particular musical artist, the prominence of those particular platforms, or any other possible differences between the platforms. Moreover, not all platforms are as relevant to artists and are, therefore, not equally maintained.

52. Doe's claims being made public in the EDM sub-culture have harmed, and will continue to harm Plaintiffs based on Plaintiffs' fan bases believing that Plaintiffs are corrupt, that Plaintiffs cannot obtain listeners to their music without partaking in alleged fraud and corruption, that Plaintiffs assisted in the blacklisting of other EDM artists, and that M. Kramer is a con artist that steals money from clients and fellow artists.

53. Doe's statements were made about Plaintiffs in their trade, business, and profession as music artists and managers.

54. So long as Doe is permitted to keep making these statements, Plaintiffs will be harmed through the alienation of their fan bases and, therefore, their sources of revenue.

55. Doe's statements were made with malice in order to harm the Plaintiffs by convincing those that listen to EDM to not listen to Plaintiffs' music and to develop an animosity towards Plaintiffs.

56. In the alternative, Doe's statements were made in a grossly irresponsible manner by which Doe knew, or reasonably should have known, that Doe's statements were false and would inflict injury on Plaintiffs in their trade, business, and profession.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiffs respectfully request that this Court enter a judgment:

a) Awarding actual damages to be determined at trial;

b) Awarding Plaintiffs an injunction against Defendant;

c) Awarding Plaintiffs the costs of this action together with reasonable attorneys' fees;

d) Awarding Plaintiffs pre- and post-judgment interest in the statutory amount; and

e) Granting such other and further relief as this Court deems necessary and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury in this action.

Date: May 1, 2020

Respectfully submitted,

_____
Thomas Foley
Brian L. Grossman
**SHIPKEVICH PLLC**
165 Broadway, Suite 2300
New York, New York 10006
Telephone:	(212) 252-3003
Facsimile:	(888) 568-5815
bgrossman@shipkevich.com
*Attorneys for Plaintiffs*