Thomas Foley
Brian L. Grossman
**SHIPKEVICH PLLC**
165 Broadway, Suite 2300
New York, New York 10006
Telephone:     (212) 252-3003
Facsimile:      (888) 568-5815
tfoley@shipkevich.com
bgrossman@shipkevich.com
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **DEBORAH TAYLOR a/k/a HOLLY T, MATTHEW KRAMER a/k/a DISCO KILLERZ, and REEM TAOZ a/k/a GATTÜSO,**<br><br>                              Plaintiff,<br><br>            - against –<br><br>**JANE DOE,**<br><br>                              Defendants. | Case No.: 1:20-cv-03398 |

<u>**PLAINTIFFS DEBORAH TAYLOR a/k/a HOLLY T, MATTHEW KRAMER a/k/a DISCO KILLERZ, AND REEM TAOZ a/k/a GATTÜSO'S MEMORANDUM OF LAW IN OPPOSITION TO JOHN DOE'S MOTION TO QUASH**</u>

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................................1

STATEMENT OF FACTS.........................................................................................................3

STANDARD...............................................................................................................................7

ARGUMENT..............................................................................................................................8

    I.    THE DECLARATION OF JOHN DOE IS IMPROPER AND SHOULD BE
         DISREGARDED. ...............................................................................................8

    II.   PLAINTIFFS' SUBPOENA TO NON-PARTY VERIZON SHOULD NOT BE
         QUASHED AS PLAINTIFF'S HAVE MET THEIR BURDEN TO REVEAL DOE'S
         ANONYMITY.........................................................................................................9

        A.   Plaintiffs Have Made a Prima Facie Showing of Defamation.......................................9

        B.   Plaintiffs' Subpoena to Verizon was Specific and Narrowly Tailored. ......................10

        C.   Plaintiffs Have No Other Means to Obtain the Information.........................................11

        D.   Plaintiffs Require the Name and Identifying Information of John Doe to Prove Who
           Published the Defamatory Articles and to Name the Defendant(s). ...........................13

        E.   John Doe Does Not Have a Substantial Expectation of Privacy. .................................13

    III.  JOHN DOE FAILS TO PROVIDE ANY OTHER BASIS TO QUASH THE
         SUBPOENA TO VERIZON. ............................................................................14

        A.   The Telecommunications Act Does Not Bar Plaintiffs' Subpoena. ............................14

        B.   Doe's Arguments of Lack of Evidence and Discovery is Not Relevant at this Juncture.
           15

        C.   Doe Has Not Pointed to Any Basis Why or How Doe's Identifying Information Could
           Be a False-Positive. ....................................................................................16

    IV.  IF THE COURT DENIES DOE'S MOTION TO QUASH—WHICH THE COURT
         SHOULD DENY—DOE SHOULD NOT BE PERMITTED TO PROCEED
         ANONYMOUSLY. ............................................................................................16

CONCLUSION..........................................................................................................................18

## TABLE OF AUTHORITIES

**Cases**

*Arista Records v. Doe 3*,
    604 F.3d 110 (2d Cir. 2010) ................................................................................9

*Automobile Club of New York, Inc. v. Port Authority of New York & New Jersey*,
    No. 11 Civ. 6746, 2012 WL 4791804 (S.D.N.Y. Oct. 9, 2012) ................................5

*Boule v. Hutton*,
    328 F.3d 84 (2d Cir. 2003) ................................................................................10

*Doe v. City of New York*,
    201 F.R.D. 100 (S.D.N.Y. 2001) ........................................................................18

*Doe v. Gong Xi Fa Cai, Inc.*,
    No. 19-CV-2678 (RA) (S.D.N.Y. July 10, 2019) ...................................................17

*Doe v. Solera Capital LLC*,
    18 Civ. 1769 (ER) (S.D.N.Y. Mar. 31, 2019).......................................................17

*In re Fitch, Inc.*,
    330 F.3d 104 (2d Cir. 2003) ................................................................................5

*Kaye v. N.Y.C. Health & Hosps. Corp.*,
    18-CV-12137 (JPC) (JLC) (S.D.N.Y. Dec. 9, 2020) ..............................................5

*Malibu Media, LLC. v. John Doe*,
    15 Civ. 1834 (JGK) (S.D.N.Y. July 20, 2015) ......................................................9

*Michael v. Bloomberg L.P.*,
    14-cv-2657 (TPG) (S.D.N.Y. Feb. 11, 2015) ......................................................17

*Mirlis v. Greer*,
    952 F.3d 51 (2d Cir. 2020) ...........................................................................17, 18

*Prescient Partners, L.P. v. Fieldcrest Cannon, Inc.*,
    96 Civ. 7590 (DAB)(JCF), 1998 WL 67672 (S.D.N.Y. Feb. 18, 1998) ...................5

*Sony Music Entertainment Inc. v. Does 1-40*,
    326 F. Supp. 2d 556 (S.D.N.Y. 2004).......................................................9, 11, 13

*Stepanov v. Dow Jones & Co.*,
    987 N.Y.S.2d 37 (1st Dep't 2014) .....................................................................10

*Tannerite Sports, LLC v. NBCUniversal News Grp.*,
　　864 F.3d 236 (2d Cir. 2017) ..................................................................10

*U.S. v. Amodeo*,
　　71 F.3d 1044 (2d Cir. 1995) .................................................................17

*U.S. v. Maldonado-Rivera*,
　　922 F.2d 934 (2d Cir. 1990) ...................................................................8

*United States v. Ulbricht*,
　　858 F.3d 71 (2d Cir. 2017) .....................................................................4

*Vaigasi v. Solow Mgmt. Corp.*,
　　11 Civ. 5088 (RMB)(HBP) (S.D.N.Y. Feb. 16, 2016)............................5

**Statutes**

28 U.S.C. § 1746 ...........................................................................................8

47 U.S.C. § 551.......................................................................................14, 15

**Rules**

Rule 26 ..........................................................................................................7

Rule 45 ......................................................................................................7, 8

iv

Plaintiffs Deborah Taylor a/k/a Holly T, Matthew Kramer a/k/a Disco Killerz, and Reem Taoz a/k/a Gattüso (together "Plaintiffs") submit this memorandum of law in opposition (the "Opposition") to John's Doe's Motion to Quash, dated December 14, 2020, Dkt. No. 15 (the "Motion").

## PRELIMINARY STATEMENT

This matter arises out of an anonymous user drafting and twice posting an article defaming the Plaintiffs in their business (the "Defamatory Article"). The Defamatory Article was posted on a website called Medium—which permits users to post articles that they write for anyone in the world to see—with accounts created just for the purpose of posting the Defamatory Article and connected to email addresses similarly created for the sole purpose of defaming the Plaintiffs. Indeed, the poster of the Defamatory Article went to even further lengths to conceal their identity, using a virtual private network ("VPN") to hide their internet protocol ("IP") address even from Medium when making the posting. Multiple internet service providers (each an "ISP") returned Plaintiffs' subpoena by referring them to a company incorporated in Panama that specializes in providing VPN services to clients and promises to never reveal their clients' true identities or any other information about their clients. However, the anonymous poster slipped up and failed to use the VPN to cover their IP address on one occasion, when John Doe's—the moving party on this Motion to Quash—IP address was used to access the Medium account that posted the Defamatory Article.

Plaintiffs know that it was the moving party's IP address after initially being permitted to subpoena Medium for the account information and access records for the accounts that posted the Defamatory Article and since being permitted to use the information obtained from Medium to subpoena the ISPs associated with the IP addresses that Medium provided. Despite this clear chain

1

of events leading to John Doe's IP address John Doe now seeks to quash Plaintiffs subpoena to Verizon without any basis whatsoever to do so. Throughout John Doe's Motion and Declaration,[1] John Doe attempts to use rhetoric and claiming that her "privacy as an American should still matter" in an attempt to quash a duly issued subpoena to an ISP.

Doe cites to various case law through her Motion in an attempt to quash Plaintiffs' subpoena to Verizon but fails to equate that case law to the case at bar. Instead, Doe makes arguments that fail as a matter of law and fact, such as: providing and relying on an improper declaration; arguing that Plaintiffs have not provided sufficient evidence of defamation despite discovery not officially beginning until after the Defendant is named; falsely claiming that Plaintiffs are not in possession of the Defamatory Article after Plaintiffs sent John Doe's counsel a copy of the Defamatory Article; claiming that the subpoena is somehow overly broad without explaining what in the subpoena is overbroad; arguing that the Telecommunications Act bars the subpoena but intentionally omitting the portion of the Telecommunications Act that explicitly grants telecommunications providers the right to disclose information; arguing that "the perpetrator might turn out to be a neighbor in an apartment building that uses shared IP addresses or a dormitory that uses shared wireless networks" without so much as even providing unsworn testimony in the Declaration that is possible; alleging, without any basis, that there is a risk here of a "false positive" hit; and arguing that because John Doe was previously a victim of identity theft that her information should not be provided to Plaintiffs.

Finally, John Doe tries to argue, without providing any basis, that John Doe should be permitted to proceed anonymously if the Court denies the Motion. But again, Doe fails to provide

---

[1] Plaintiffs do not accept John Doe's "Declaration" as it fails to meet the requirements of a Declaration as it is not executed.

2

any basis for being permitted to proceed anonymously and simply cites to general standards and cases regarding the issue. Doe does not come close to meeting the standard for proceeding anonymously—which requires a showing of actual harm that will come in the event John Doe's name is exposed—a standard that has previously been denied in the unfortunate instances of victims of sexual assault and threats on the lives of family members. John Doe has not, and cannot, show that she meets the burden for proceeding anonymously.

John Doe's Motion should be denied in its entirety and Verizon should be ordered to produce John Doe's personal identifying information immediately.

## STATEMENT OF FACTS

### *Background*

Plaintiffs filed this defamation action against a "Jane Doe" defendant because Plaintiffs are as yet unable to ascertain the true identity of Doe without discovery. On or about March 22, 2020, two accounts from the website Medium posted articles titled "Spotify Corruption and EDM" and "Spotify Corruption & Austin Kramer vs EDM" (together, the "Defamatory Articles"). (Complaint, dated May 19, 2020, Dkt. No. 4 ("Complaint"), ¶ 21.) The Medium accounts that posted the Defamatory Articles were @kitttykat97 a/k/a @kitttykat and @Edmnation2020 a/k/a @Edmnation (together, the "Medium Accounts") but the true identity of the owners of the Medium Accounts is unknown.[2] (Complaint, ¶ 9.) In order to attempt to ascertain the true identity of the owner of the Medium Accounts, Plaintiffs requested, and the Court granted, permission to subpoena Medium before the official start of discovery. (Dkt. Nos. 6 and 7.)

---

[2] However, upon information and belief, the Medium Accounts are owned by the same individual or group of individuals.

3

*Early Discovery to Determine Defendant's True Identity*

Plaintiffs subpoenaed Medium and on September 9, 2020, Medium responded by providing Plaintiffs with information on the Medium Accounts, including the date each account was created, the email address associated with each account, and the IP[3] addresses used to access the accounts. (*See* Foley Decl., ¶ 2[4] ("Medium Response").) Medium did not have the true identities of the owners of the Medium Accounts. (Medium Response.) Medium also did not have copies of the Defamatory Articles despite Plaintiffs' counsel initially contacting Medium to take down the Defamatory Articles and informing Medium of the likelihood of impending litigation. (Foley Decl., ¶ 3.) Based on the IP addresses that were included in the Medium Response, Plaintiffs used an online, public IP address search to identify the internet service provider ("ISP") associated with each IP address. (Foley Decl. ¶ 4.)

On October 23, 2020, Plaintiffs requested, and the Court granted, permission to subpoena the ISPs that Plaintiffs identified as being associated with the IP addresses that Medium indicated accessed the Medium Accounts. (Dkt. No. 10.) Plaintiffs sent out those subpoenas and—according to John Doe—on November 5, 2020, Verizon informed John Doe that Verizon had received a request to produce John Doe's personal identifying information for this action. (Dkt. No. 11.) No other ISP provided Plaintiffs with any names or other personal identifying information for the IP addresses in the subpoenas. (Foley Decl., ¶ 5.)

---

[3] IP stands for "internet protocol" and an IP address is a unique numerical number that is assigned to every device that is connected to the internet and it has been compared to an online telephone number. *See United States v. Ulbricht*, 858 F.3d 71, 83-84 (2d Cir. 2017) ("'[e]very device on the Internet is identified by a unique number' called an IP address. 'This number is used to route information between devices, for example, between two computers.' In other words, an 'IP address is analogous to a telephone number' because 'it indicates the online identity of the communicating device without revealing the communication's content.'")

[4] All exhibits are attached to the Declaration of Thomas J. Foley, dated January 5, 2021 (the "Foley Decl.").

4

*Defendant's Attempts to Cover Their Tracks*

Rather, ISPs M247 Europe and Eonix referred Plaintiffs to a company called "Nord VPN" as the holder of the IP addresses associated with each respective ISP and Plaintiffs have not received any further responses. (Foley Decl., ¶ 6.) Nord VPN is incorporated in Panama. (General Terms of Service, NordVPN, dated October 26, 2020, last visited December 28, 2020, available at https://my.nordaccount.com/legal/terms-of-service/?_ga=2.78279890.779352997.1609177121-617848478.1608765227.) Nord VPN's website states that a VPN "creates an encrypted tunnel for your data, protects your online identity by hiding your IP address," that Nord VPN keeps "all your internet data [] safe behind a wall of next-generation encryption," and that Nord VPN does not "track, collect, or share your private data." (Get all the benefits of VPN, NordVPN, last visited January 5, 2021, available at https://nordvpn.com/features/; Get all the benefits, NordVPN, last visited December 23, 2020, available at https://nordvpn.com/features/).

*John Doe's Motion to Quash*

On November 6, 2020, John Doe's attorney—Peter D. Hatzipetros, Esq.—filed a letter request for an extension of time to file a motion to quash the subpoena to Verizon. (Dkt. No. 11.) Prior to the filing of this letter request, Plaintiffs were not aware of John Doe and neither John Doe—nor anyone on behalf of John Doe had contacted Plaintiffs regarding the subpoena.[5] (Foley

---

[5] John Doe never attempted to confer with Plaintiffs per the Court's Individual Rules of Practice Rule 3(D), either for the Letter Motion to Request an Extension or for the actual Motion. Courts have sufficient basis to deny a discovery motion due to a failure to meet and confer regarding the motion. *See Kaye v. N.Y.C. Health & Hosps. Corp.*, 18-CV-12137 (JPC) (JLC), at *25 (S.D.N.Y. Dec. 9, 2020) ("As many courts have held, the failure to meet and confer in good faith with opposing counsel is 'sufficient reason by itself to deny [a party's] motion to compel.'"); *Vaigasi v. Solow Mgmt. Corp.*, 11 Civ. 5088 (RMB)(HBP), at *29 (S.D.N.Y. Feb. 16, 2016) (a "failure to meet and confer with defense counsel in good faith is sufficient reason by itself to deny plaintiff's motion to compel."); *Automobile Club of New York, Inc. v. Port Authority of New York & New Jersey*, No. 11 Civ. 6746, 2012 WL 4791804, at *6 (S.D.N.Y. Oct. 9, 2012) (holding failure to meet and confer basis for denying motion to compel); *Prescient Partners, L.P. v. Fieldcrest Cannon, Inc.*, 96 Civ. 7590 (DAB)(JCF), 1998 WL 67672 at *3 (S.D.N.Y. Feb. 18, 1998) ("[T]he failure to meet and confer mandates denial of a motion to compel."); *see also In re Fitch, Inc.*, 330 F.3d 104, 108 (2d Cir. 2003) ("Motions to compel and motions to quash a subpoena are both 'entrusted to the sound discretion of the district court.'")

Decl., ¶ 7.) Upon Plaintiffs receiving the notification for Dkt. No. 11, Plaintiffs called and emailed John Doe's counsel to attempt to confer and see if a solution could be reached as to the subpoena to Verizon that would satisfy Plaintiffs that John Doe was not the individual that Plaintiffs were looking for and that would provide John Doe with comfort and security to assuage John Doe's unfounded and baseless concerns regarding exposure of John Doe's identity, but John Doe initially refused all such offers. (Foley Decl., ¶ 8.) Plaintiffs also requested John Doe's basis for seeking to quash the subpoena and the only explanation offered was that John Doe did not want her identity exposed in association with the lawsuit because of previous identity theft and was also not initially willing to provide her identity to Plaintiffs as "attorneys' eyes only" or in any other manner to confirm that she was not involved. (Foley Decl., ¶ 9.)

### Attorney Hatzipetros's Possible Connection to this Lawsuit

Since attorney Hatzipetros initially filed the letter with the Court to request an extension of time, Plaintiffs have researched attorney Hatzipetros because of his seemingly odd representation in this matter. According to his website, attorney Hatzipetros specializes in cryptocurreny, anti-money laundering, blockchain implementation, escrow services, and business formation but not any form of litigation. (Services, Petros Law Group, last visited December 31, 2020, available at https://petroslawgroup.com/#services.) Upon even further investigation, it became clear through various public social media accounts that attorney Hatzipetros grew up with and is close friends with two individuals who are both heavily involved in the EDM industry, personally know the Plaintiffs in this litigation, and all three of whom live near one another in the same neighborhood in Queens in which the Verizon IP address is also located.[6] (Foley Decl., ¶ 10.)

---

[6] Plaintiffs have not included the names of these individuals in this filing for their protection during this preliminary stage of the litigation but the names can be provided to the Court if necessary.

One of those individuals was also recently involved in an incident whereby certain adult content was posted online that depicted that individual with a woman who also appears to be involved in the EDM industry based on her public social media accounts. (Foley Decl., ¶ 11.) That posting has since been removed—at least in part—due to a certain adult content provider's only recent crackdown on "revenge" type postings. (Foley Decl., ¶ 12.) However, the significance of this posting to the present matter is that the username of the account that initially posted the adult content includes "KITTYKAT" as part of the username, nearly identical to one of the Medium Accounts that posted the Defamatory Articles, @kitttykat97. (Foley Decl., ¶ 13.) At this point, it is not clear whether the individuals involved in the adult posting were victims or protagonists based on the posting, but it is clearly a line of inquiry that needs to be pursued to identify the defendant in the present matter.

*Attempts to Resolve the Matter Short of Filing the Motion to Quash*

Plaintiffs initially offered for John Doe to sign a declaration that would be deemed attorneys' eyes only in an effort to assuage John Doe's concerns regarding the publicity of her name. (Foley Decl., ¶ 14.) However, John Doe initially refused this offer and Plaintiffs ultimately decided to remove this offer after the difficulty Plaintiffs initially had in attempting to resolve the need for John Doe's personal information. (Foley Decl., ¶ 15.)

## **STANDARD**

Pursuant to Federal Rule of Civil Procedure (each a "Rule" and all together the "Rules") 26(b)(1), parties may "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." However, a "party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Rule 45(d)(1). Finally, upon a timely

motion, a court may quash a subpoena that "(i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." Rule 45(d)(3)(A).

## **ARGUMENT**

### I.   THE DECLARATION OF JOHN DOE IS IMPROPER AND SHOULD BE DISREGARDED.

John Doe's Declaration is improper and should be disregarded. An individual may provide an unsworn declaration in federal court so long as it complies with the requirements in 28 U.S.C. § 1746. Pursuant to § 1746, a declaration must be "in writing of such person which is subscribed by him." 28 U.S.C. § 1746. Furthermore, a declaration must be signed by the declarant. 28 U.S.C. § 1746(2) (requiring a "Signature"). Where a declaration is not signed, the court should decline to credit the declaration. *U.S. v. Maldonado-Rivera*, 922 F.2d 934, 972 (2d Cir. 1990) ("The court properly . . . declined to credit the 'declaration[s]' because they were not sworn to or even signed."). John Doe did not sign the declaration in support of Doe's Motion. (*See* Motion, Declaration.) Rather, Doe "signed" the declaration in support of Doe's Motion with a hand-written IP address, not Doe's real name, utilizing the IP address as a cipher, but known only to one party rendering it useless. (*See* Motion, Declaration.) Doe's failure to execute and sign the declaration warrants the Court disregarding Doe's declaration—and the statements contained therein—in its entirety.

## II. PLAINTIFFS' SUBPOENA TO NON-PARTY VERIZON SHOULD NOT BE QUASHED AS PLAINTIFF'S HAVE MET THEIR BURDEN TO REVEAL DOE'S ANONYMITY.

Plaintiff's subpoena to non-party Verizon should not be quashed. Courts review five factors when determining whether a motion to quash to preserve anonymity should be granted. *Arista Records v. Doe 3*, 604 F.3d 110, 119 (2d Cir. 2010). Courts look at:

> (1) [the] concrete[ness of the plaintiffs] showing of a prima facie claim of actionable harm, . . .
> (2)[the] specificity of the discovery request, . . .
> (3) the absence of alternative means to obtain the subpoenaed information, . . .
> (4)[the] need for the subpoenaed information to advance the claim, . . . and
> (5) the [objecting] party's expectation of privacy.

*Arista Records*, 604 F.3d at 119 (ellipses and insertions in original) (quoting *Sony Music Entertainment Inc. v. Does 1-40*, 326 F. Supp. 2d 556, 564 (S.D.N.Y. 2004)) (affirming denial of motion to quash subpoena). The factors are used to "weigh the need for disclosure against First Amendment interests." *Sony Music Entertainment Inc. v. Does 1-40*, 326 F. Supp. 2d 556, 564 (S.D.N.Y. 2004). Nor are Doe's arguments—even if they are considered despite the improper nature of the declaration—enough to quash the subpoena. *See Malibu Media, LLC. v. John Doe*, 15 Civ. 1834 (JGK), at *8 (S.D.N.Y. July 20, 2015) ("Doe also claims that the subpoena should be quashed because he is not the real infringer. This argument, however, is not a reason to quash the subpoena. Neither Malibu nor the Court is required to accept the unsupported allegation that Doe is not an infringer.") Here, all of the factors weigh in favor of disclosure of John Doe's identity and, therefore, Doe's Motion should be denied in its entirety.

### A. Plaintiffs Have Made a Prima Facie Showing of Defamation.

Plaintiffs have made a prima facie showing of defamation and Doe has not argued that Plaintiffs have not made a prima facie claim of defamation. To satisfy the concreteness of a prima facie claim before discovery, courts look to the pleadings. *Arista Records*, 604 F.3d at 122 (finding

9

that plaintiffs' "pleading plainly states copyright infringement claims that are plausible" in addressing the first factor). To plead defamation, a plaintiff must allege "(1) a false statement that is (2) published to a third party (3) without privilege or authorization, and that (4) causes harm, unless the statement is one of the types of publications actionable regardless of harm." *Tannerite Sports, LLC v. NBCUniversal News Grp.*, 864 F.3d 236, 245 (2d Cir. 2017) (quoting *Stepanov v. Dow Jones & Co.*, 987 N.Y.S.2d 37, 41 (1st Dep't 2014)). Plaintiffs have pleaded that the statements in the Defamatory Articles were materially false and listed false allegations in the Complaint as well as the basis for why the allegations are false. (Complaint, ¶¶ 27–36.) Plaintiffs have also pleaded that Defamatory Articles were published to third parties, as the Defamatory Articles were published online on Medium.com. (Complaint, ¶¶ 1, 3, 21–22, 44.)[7] Plaintiffs pleaded that the author of the Defamatory Articles made them with animus, based on rumors, with no independent investigation as to the truth of the statements. (Complaint, ¶¶ 48–51.) Plaintiffs have also pleaded harmed caused by the publication of the Defamatory Articles and the Defamatory Articles are, anyway, in regards to Plaintiffs' business and therefore harm is presumed. (Complaint, ¶¶ 47, 52–56; *Boule v. Hutton*, 328 F.3d 84, 94 (2d Cir. 2003) ("Where a statement impugns 'the basic integrity' of a business, an action for defamation per se lies, and general damages are presumed.").) Plaintiffs have made a prima facie showing of defamation.

## B.  Plaintiffs' Subpoena to Verizon was Specific and Narrowly Tailored.

Plaintiffs' subpoena was also specific and narrowly tailored. When seeking discovery related to the identity of an anonymous party, a discovery request must be "sufficiently specific to

---

[7] Doe's counsel falsely claims that "[b]y Plaintiffs' own admissions, they are not in possession of the underlying defamatory statements subject to this litigation." (Motion, 6.) However, Doe's counsel knows this is false as Plaintiffs' counsel provided Doe's counsel with a copy of the Defamatory Article on November 30, 2020—two weeks before Doe filed the Motion—through screenshots that Plaintiffs took prior to the Defamatory Article being removed from Medium. (Foley Decl., ¶ 16 (the "Article Email").)

establish a reasonable likelihood that the discovery request would lead to identifying information that would make possible service upon particular defendants who could be sued in federal court." *Sony Music Entertainment Inc.*, 326 F. Supp. 2d at 566. Here, Plaintiffs' subpoena to Verizon requested "[a]ny and all information regarding the personal identifiable information of users of the IP addresses" that Medium identified as the IP addresses that were used by the author/poster of the Defamatory Articles. (*See* Foley Decl., ¶ 17.) The documents requested by the subpoena to Verizon requested information "that would make possible service upon particular defendants that could be sued in federal court" and did not request anything further. *See Sony Music Entertainment Inc.*, 326 F. Supp. at 566 (finding subpoena specific enough where plaintiffs sought "identifying information about particular Cablevision subscribers, based on the specific times and dates when they downloaded specific copyrighted and licensed songs" because it will "enable plaintiffs to serve process on defendants.").) Here, Plaintiffs have done exactly what the Court permitted in *Sony Music Entertainment*, sought identifying information of particular Verizon subscribers based on the specific times and dates when someone logged into the authoring/publishing Medium account. Plaintiffs' subpoena was specific enough to identify information "that would make possible service upon particular defendants who could be sued" in this Court and indeed was specific enough for Verizon to identify a specific customer, the movant, whom they notified.

### C.  Plaintiffs Have No Other Means to Obtain the Information.

Plaintiffs have no other means—except for this subpoena—to obtain the personal information of the poster of the Defamatory Article. Where a plaintiff has exhausted all other means to locate the defendants. *Sony Music Entertainment Inc.*, 326 F. Supp. 2d at 566. Here, Plaintiffs have attempted to get the information directly from the website the Defamatory Article was posted on—Medium—but Medium did not have any identifying information and only had IP

11

addresses that the user used when accessing Medium. (Foley Decl., ¶¶ 2, 18.) Based on the IP addresses, Plaintiffs ran searches through publicly available databases to attempt to trace the users but were only able to garner names of ISPs and not any personal information. (Foley Decl., ¶ 19.) Plaintiffs then provided each ISP that was identified with a subpoena requesting the personal identifying information for the particular IP addresses provided by Medium. (Foley Decl., ¶ 20.) Other ISPs—except for Verizon—that Plaintiffs received a response from indicated that the IP address traced back to a virtual private network ("VPN") called "Nord VPN"—that is incorporated in Panama—that blocks a user's IP address. (Foley Decl., ¶ 21.) Nord VPN's website even states that a VPN "creates an encrypted tunnel for your data, protects your online identity by hiding your IP address," that Nord VPN keeps "all your internet data [] safe behind a wall of next-generation encryption," and that Nord VPN does not "track, collect, or share your private data." (What is a VPN?, NordVPN, last visited December 23, 2020, available at https://nordvpn.com/about-vpn-site/; Get all the benefits, NordVPN, last visited December 23, 2020, available at https://nordvpn.com/features/). Plaintiffs would have to go through the Hague Convention to even subpoena NordVPN—which would take months—but based on NordVPN's website, that subpoena would be useless as NordVPN claims it does not "track, collect, or share your private data," so there will likely be nothing to obtain after an expensive and time-consuming process. John Doe the only person that can provide his or her own information as any and all information regarding the personal identifiable information of users of the IP addresses associated with Verizon by either providing it firsthand, or consenting to Verizon to respond to the subpoena. That information is required to identify, or aid in identifying, the author/publisher of the Defamatory Articles. Plaintiffs have no other means of identifying the author/publisher of the Defamatory Articles other than the subpoena to Verizon.

**D. Plaintiffs Require the Name and Identifying Information of John Doe to Prove Who Published the Defamatory Articles and to Name the Defendant(s).**

Plaintiffs require the name and identifying information of John Doe in order to prove who published the Defamatory Articles and to name the Defendant(s) in this lawsuit. A plaintiff may subpoena information that "is centrally needed for plaintiffs to advance their" claims. *Sony Music Entertainment Inc.*, 326 F. Supp. 2d at 566. John Doe has been identified—by Verizon, John Doe's ISP—as the person that uses an IP address linked to the account that posted the Defamatory Article. (Foley Decl., ¶ 22) John Doe claims—in a non-conforming and invalid declaration—that Doe does "not know any of the parties named in the Complaint, nor is [Doe] familiar with the matters discussed or platforms which posted the defamation article." (Motion, Declaration, ¶ 9.) What John Doe does not claim in the Declaration is that Doe did not post the article, whether Doe permits other individuals to use Doe's internet, whether other individuals live in or frequent the home where Doe has the internet, or that Doe does not know who did post the Defamatory Article. (*See* Motion, Declaration.) Plaintiffs need to know Doe's personal identifying information to—at a minimum—obtain discovery from Doe as to who did use Doe's internet to post the Defamatory Article and to corroborate the Declaration and—at a maximum—to name Doe in this lawsuit as the Defendant. Plaintiffs require the name and identifying information of John Doe in order to prove who published the Defamatory Articles.

**E. John Doe Does Not Have a Substantial Expectation of Privacy.**

John Doe does not have a substantial expectation of privacy in using the Verizon internet service. An individual has little expectation in privacy when violating an ISP's terms of service and where an ISP specifically reserves its right to disclose information pursuant to applicable laws. *Sony Music Entertainment Inc.*, 326 F. Supp. 2d at 566 (finding "defendants have little expectation of privacy in downloading and distributing copyrighted songs without permission."). Pursuant to

13

Verizon's internet terms of service, users "agree not to use, or permit others to use, the Service in ways that (i) violate any law or applicable regulation, this Agreement or our AUP or our other policies, (ii) infringe the rights of others, or (iii) interfere with the users, services, or equipment and software of our network or other networks. By way of example and not limitation, you agree not to . . .  distribute obscene or defamatory material over the Internet. . ." (Foley Decl., ¶ 23.) Verizon's privacy policy also informs users that it "may also share personally identifiable information if it is required by law to comply with valid legal process." (Foley Decl., ¶ 24.) John Doe does not have a substantial expectation of privacy in using the Verizon internet service as Doe agreed to the terms of service and privacy policy, breached the terms of service, and Doe was made aware that Doe's personal information may be disclosed pursuant to valid legal process.

## III.   JOHN DOE FAILS TO PROVIDE ANY OTHER BASIS TO QUASH THE SUBPOENA TO VERIZON.

### A.  The Telecommunications Act Does Not Bar Plaintiffs' Subpoena.

Plaintiffs' subpoena is not barred by the Telecommunications Act. The Telecommunications act explicitly permits the disclosure of an individual's personal identifying information where it is "made pursuant to a court order authorizing such disclosure, if the subscriber is notified of such order by the person to whom the order is directed" 47 U.S.C. § 551(c)(2)(B). John Doe argues that:

> The Telecommunications Act expressly protects consumers such as Movant by stating that "a cable operator shall not disclose personally identifiable information concerning any subscriber without the prior written or electronic consent of the subscriber concerned and shall take such actions as are necessary to prevent unauthorized access to such information by a person other than the subscriber or cable operator." 47 USCA §551)(1). [sic]

(Motion, 4–5.) But Doe intentionally omits the clause that immediately precedes the above-quoted language, which states "*Except as provided in paragraph (2)*, a cable operator shall not disclose .

14

. ." 47 U.S.C. § 551(c)(1). Doe ignores the portion—in the very same subsection—that permits Verizon's disclosure of Doe's personal identifying information. (Motion, 4–5.)

Here, the Court already granted Plaintiffs permission to issue the subpoena to Verizon—among other ISPs—for Plaintiffs to seek the personal identifying information for certain IP addresses that include John Doe's IP address. (Order, dated October 29, 2020, Dkt. No. 10.) Additionally, Verizon made John Doe aware of the subpoena in advance of the disclosure. (Letter from Peter Hatzipetros, Esq., dated November 6, 2020, Dkt. No. 11 (indicating that John Doe received correspondence from Verizon in advance of production of John Doe's personal identifying information).)  Plaintiffs' subpoena is not barred by the Telecommunications Act.

**B.  Doe's Arguments of Lack of Evidence and Discovery is Not Relevant at this Juncture.**

John Doe's argument that Plaintiffs do not have sufficient evidence is premature and irrelevant at this juncture when Plaintiffs are still attempting to identify the Defendant. John Doe falsely claims that "By Plaintiffs' own admissions, they are not in possession of the underlying defamatory statements subject to this litigation." (Motion, 6.) John Doe knows this is false because two weeks before John Doe filed the Motion—during communications to try to alleviate John Doe's privacy "concerns"—Plaintiffs' counsel emailed John Doe's counsel a copy of the Defamatory Article that Plaintiffs had screenshotted before it was taken down. (Article Email.) John Doe further attempts to argue that "Plaintiffs require far more information and evidence to advance their claims for defamation" and that Plaintiffs have not put forth evidence of the Defamatory Articles' publication or produced a third-party witness to authenticate the Defamatory Articles. (Motion, 6–7.) But John Doe fails to understand that discovery has not even officially commenced yet and Plaintiffs were only granted the limited ability to seek discovery as to identify the Defendant(s) in this action. As discussed previously, Plaintiffs have made a prima facie

showing of defamation and, at this juncture, that is all that is required and all that can be done without Plaintiffs being able to conduct preliminary discovery.

**C.   Doe Has Not Pointed to Any Basis Why or How Doe's Identifying Information Could Be a False-Positive.**

John Doe also seems to argue that "the perpetrator might turn out to be a neighbor in an apartment building that uses shared IP addresses or a dormitory that uses shared wireless networks." (Motion, 7.) But John Doe's invalid declaration—much less actual evidence or a valid declaration—does not even mention anything about this possibility or how this could be a false positive. (*See* Motion, Declaration.) Rather, John Doe seems to be making arguments on pure speculation to try and see what will work but John Doe—a self-described 63-year-old woman—has not stated that she lives in a dormitory with shared wireless networks or even that anyone in her apartment building shares her IP address. Quite conversely, John Doe—in the improper declaration—states that Doe previously had information stolen and is "terrified" of having Doe's information in the public sector, making it extremely unlikely that Doe would have shared her internet with anyone outside of people Doe directly knows. (Motion, Declaration, ¶¶ 7–8.) Doe previously having personal information stolen and being a victim of identity theft is also irrelevant to the Motion and the merits that warrant disclosure of Doe's personal identifying information. Doe has not pointed to any way—whether in the Motion or even in Doe's improper declaration—that Verizon identifying Doe was a false positive.

**IV.   IF THE COURT DENIES DOE'S MOTION TO QUASH—WHICH THE COURT SHOULD DENY—DOE SHOULD NOT BE PERMITTED TO PROCEED ANONYMOUSLY.**

If the Court denies the Motion—which it should—John Doe should not be permitted to proceed in this litigation anonymously. "Judicial documents are subject at common law to a potent and fundamental presumptive right of public access that predates even the U.S. Constitution"

16

*Mirlis v. Greer*, 952 F.3d 51, 58 (2d Cir. 2020). "The presumption of access is thus fundamental and not casually overcome." *Mirlis*, 952 F.3d at 61 (finding "strong presumption of public access" to excerpts of video deposition of non-party that was sexually abused as a minor but ultimately determining that the non-party had a greater privacy interest). "In determining the weight to be accorded an assertion of a right of privacy, courts should first consider the degree to which the subject matter is traditionally considered private rather than public" but "[t]he nature and degree of injury must also be weighed." *U.S. v. Amodeo*, 71 F.3d 1044, 1051 (2d Cir. 1995). But, "[r]aw, unverified information should not be as readily disclosed as matters that are verified." *Amodeo*, 71 F.3d at 1051. However, a party wishing to proceed anonymously bears a high burden and must show actual harm that will arise if their name is exposed. *Doe v. Gong Xi Fa Cai, Inc.*, No. 19-CV-2678 (RA), at *5 (S.D.N.Y. July 10, 2019) ("The Court is sympathetic to Plaintiff's request. The desire to shield oneself from the fear of public scrutiny concerning matters of sexual harassment and retaliation is understandable. Nonetheless, Plaintiff has not met her burden of demonstrating that her interest in proceeding anonymously outweighs the public's interest in disclosure and prejudice to defendants"); *Doe v. Solera Capital LLC*, 18 Civ. 1769 (ER), at *25 (S.D.N.Y. Mar. 31, 2019) (denying "Doe's motion for a protective order to continue to proceed anonymously" where Doe alleged that she was "a victim of domestic violence by her former husband," "was held in captivity and severely injured until she was rescued by an organization that supports victims of domestic violence," an "organization relocated Doe to two different safe-houses to escape her husband," and "her husband continues to search for her, even after her name change in April 2015, including as recently as July 2018, when he made death threats against her family members to pressure them to disclose information about Doe."); *Michael v. Bloomberg L.P.*, 14-cv-2657 (TPG), at *6 (S.D.N.Y. Feb. 11, 2015) (denying request to proceed anonymously

17

where "[t]here is no issue here of physical retaliation or mental harm."); *Doe v. City of New York*, 201 F.R.D. 100, 102 (S.D.N.Y. 2001) (denying anonymity where any injury was purely reputational and case did not involve private or intimate matter).

Here, John Doe has not pointed to any privacy rights that warrant reversal of the "fundamental presumptive right of public access." Doe cites to a three-part test—from the District of Colorado—as well as other case law on the topic but fails to analyze the issue in relation to the case at bar. (Motion, 8–9.) Rather, Doe simply states that "[i]t is in the interests of justice and an equal and fair application of the law that Movant's personally identifying information be safeguarded in the litigation moving forward until such time as this Court deems just and proper, or until filing of a Motion to Dismiss, whichever is sooner." (Motion, 9.) Doe has not pointed to any interest that outweighs the right of public disclosure. Individuals' names are not "traditionally considered private rather public" and Doe has not pointed to any injury that Doe would incur through the disclosure of Doe's true identity. *C.f. Mirlis*, 952 F.3d at 61 (reversing district court's order permitting disclosure of deposition testimony where third-party witness testified in detail about being the victim of sexual abuse as a minor by a religious leader). All John Doe has claimed here is that Doe was previously the victim of identity theft and that Doe's "privacy as an American should still matter." Such rhetoric is not a legal standard and Doe has no basis to proceed anonymously in this litigation.

<u>**CONCLUSION**</u>

John Doe's Motion to Quash the subpoena to Verizon should be denied in its entirety and Verizon should be ordered to turnover John Doe's personal identifying information. John Doe has not demonstrated that any of the factors necessary to quash the subpoena to Verizon are present here and has provided only an unsigned, unsworn declaration in support of the Motion. John Doe

18

has also not provided any basis to proceed in this matter anonymously as Doe has not provided

any basis other than she would like to proceed anonymously if the subpoena is not quashed. The

Court should deny John Doe's Motion to Quash in its entirety and order Verizon to produce John

Doe's personal identifying information immediately.


Dated:  January 5, 2021

Brian L. Grossman
**SHIPKEVICH PLLC**
165 Broadway, STE 2300
New York, New York 10006
Telephone:      (212) 252-3003
Facsimile:      (888) 568-5815
bgrossman@shipkevich.com
*Attorneys for Plaintiff*

19