```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 7/12/2021
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DEBORAH TAYLOR a/k/a HOLLY T, MATTHEW KRAMER a/k/a DISCO KILLERZ, and REEM TAOZ a/k/a GATTUSO,

                Plaintiffs,

       -against-

JANE DOE,

                Defendant.

1:20-cv-03398-MKV

MEMORANDUM
OPINION AND ORDER

MARY KAY VYSKOCIL, United States District Judge:

       This is a defamation action arising from anonymous blog posts. Nonparty Jane Doe ("Doe") moves, pursuant to Federal Rule of Civil Procedure 45, to quash Plaintiffs' subpoena served on nonparty Verizon, Doe's internet service provider ("ISP"), to prevent disclosure of Doe's personal identifying information. (Mot. Quash [ECF No. 15].) For the following reasons, Doe's motion is DENIED.

## BACKGROUND

       Plaintiffs Deborah Taylor (a/k/a Holly T), Matthew Kramer (a/k/a Disco Killerz), and Reem Toaz (a/k/a Gattuso) commenced this defamation action against Defendant Jane Doe ("Defendant") in May 2020. (Compl. [ECF No. 4].) Plaintiffs are musical artists in the electronic dance music ("EDM") industry who rely on their music to make a living. (Id. ¶¶ 2, 12.) Plaintiffs post their music on Spotify, a music streaming platform that enables artists to generate revenue. (Id. ¶¶ 13–15, 18–19, 47.) Plaintiffs' presence on Spotify "is an integral aspect of their professional careers." (Id. ¶ 19.)

       Plaintiffs allege that Defendant posted materially false articles about Plaintiffs and their careers on Medium, an online blogging platform, through anonymous accounts. (Id. ¶¶ 9, 21–23,

27–36.)[1]  The alleged posts accuse Plaintiffs of participating in a "corruption circle" with nonparty Austin Kramer, a Spotify executive (no relation to Plaintiff Matthew Kramer), to falsely inflate the number of streams Plaintiffs receive by adding their music to popular curated playlists on Spotify.  (*Id.* ¶¶ 28–36.)  The posts state that Austin Kramer hosts "secret hang outs" with Plaintiff Taylor and other "aspiring singers that are all looks and no vocals" and lets them select the tracks for the curated playlists.  (*Id.* ¶ 28.)  The posts accuse Taylor and Austin Kramer of trash-talking artists and blacklisting them from playlists.  (*Id.* ¶ 29.)  The posts also state that Taoz and his management "beg for gigs & offer to play for free and still can't get gigs" and that Matthew Kramer, Toaz's manager, "only surround[s] himself with wealthy test tube crap artists & stays with them until he sucks them dry of all their funds and then moves to his next victim."  (*Id.* ¶ 33.)

Shortly after the lawsuit commenced, the Court granted Plaintiffs leave to serve a pre-discovery third-party subpoena on Medium to ascertain the identity of Defendant.  (Order June 24, 2020 [ECF No. 7].)  Medium did not know the identity of Defendant but provided internet protocol ("IP") addresses.  (Pls.' Letter Oct. 23, 2020 at 2 [ECF No. 9].)  Plaintiffs investigated the IP addresses, but several ISPs, including Verizon, advised Plaintiffs that they would not disclose

---

[1] The Complaint predicates subject matter jurisdiction on diversity of citizenship, pursuant to 28 U.S.C. § 1332. (Compl. ¶ 10.) There is disagreement among district courts in this circuit as to whether the presence of a John or Jane Doe defendant immediately precludes the exercise of diversity jurisdiction. *Compare Doe v. Ciolli*, 611 F. Supp. 2d 216, 220 (D. Conn. 2009) (adopting wait-and-see approach), *with Hai Yang Liu v. 88 Harborview Realty, LLC*, 5 F. Supp. 3d 443, 449 (S.D.N.Y. 2014) (finding that "§ 1332 cannot be invoked where unidentified Doe defendants, integral to determining diversity jurisdiction, are named in the complaint"). Plaintiffs allege that they are citizens of New York and New Jersey. (Compl. ¶¶ 6–8.) Although they do not know her identity, Plaintiffs alleged, upon information and belief, that Defendant is a citizen of Florida. (Compl. ¶ 9.) Accepting these allegations as true and drawing all reasonable inferences in Plaintiffs' favor, as the Court must when reviewing a complaint for subject matter jurisdiction, *Cayuga Nation v. Tanner*, 824 F.3d 321, 327 (2d Cir. 2016) (citing *Town of Babylon v. Fed. Hous. Fin. Agency*, 699 F.3d 221, 227 (2d Cir. 2012)), the Court is satisfied, at this juncture, that subject matter jurisdiction exists. But if Defendant turns out to be nondiverse, the Court will dismiss the case for lack of subject matter jurisdiction. *See, e.g.*, *Merrill Lynch Bus. Fin. Serv. Inc. v. Heritage Packaging Corp.*, No. 06–CV–3951, 2007 WL 2815741, at *3 (E.D.N.Y. Sept. 25, 2007) ("[A] plaintiff filing a federal action including Doe defendants 'does so at his peril,' because if a key party turns out to be nondiverse, the action will be dismissed for lack of jurisdiction." (quoting *Weber, Co. v. Kosack*, No. 96-CV-9581, 1997 WL 666246, at *3 (S.D.N.Y. Oct. 24, 1997))).

subscriber information absent a subpoena. (*Id.* at 3.) The Court then granted Plaintiffs leave to serve subpoenas on the ISP providers. (Order Oct. 29, 2020 [ECF No. 10].)

In November 2020, Doe requested that the Court temporarily stay execution of the subpoena served on Verizon to allow time to file a motion to quash. (Doe's Letter Nov. 6, 2020 [ECF No. 11].) The Court granted the request. (Order Nov. 6, 2020 [ECF No. 12].) Thereafter, Doe filed this motion to quash (Mot. Quash [ECF No. 15]) supported by a memorandum of law (Doe's Br. [ECF No. 15]) and her own declaration (Doe Decl. [ECF No. 15]; Am. Doe Decl. [ECF No. 20]). Plaintiffs filed a memorandum of law in opposition and a declaration of Thomas J. Foley. (Pls.' Opp. [ECF No. 17]; Foley Decl. [ECF No. 17-1].) Doe filed a reply brief. (Doe's Reply [ECF No. 21].)

## DISCUSSION

Doe argues that enforcement of the subpoena would violate the First and Fourth Amendments to the United States Constitution and the Telecommunications Act, 47 U.S.C. § 551. (Doe's Br. 4–8.) In the alternative, Doe requests leave to proceed in this litigation anonymously. (*Id.* at 8–9.)

**I. Motion To Quash**

The movant bears the burden of persuasion on a motion to quash a non-party subpoena. *John Wiley & Sons, Inc. v. Doe Nos. 1–30*, 284 F.R.D. 185, 189 (S.D.N.Y. 2012) (citing *Pegoraro v. Marrero*, No. 10 Civ. 00051(AJN)(KNF), 2012 WL 1948887, at *4 (S.D.N.Y. May 29, 2012)). Such motions are "entrusted to the sound discretion of the district court." *American Sav. Bank, FSB v. UBS PaineWebber, Inc.* (*In re Fitch*), 330 F.3d 104, 108 (2d Cir. 2003) (quoting *United States v. Sanders*, 211 F.3d 711, 720 (2d Cir. 2000)).

Federal Rule of Civil Procedure 45 provides that a court "must quash or modify a subpoena that . . . requires disclosure of privileged or other protected matter, if no exception of waiver

applies." Fed. R. Civ. P. 45(d)(3)(A)(iii).  The First Amendment protects anonymous speech. *See, e.g.*, *Buckley v. American Constitutional Law Found., Inc.*, 525 U.S. 182, 199–200 (1999); *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 341–43 (1995).  These protections extend to the internet. *See, e.g.*, *Reno v. ACLU*, 521 U.S. 844, 870–71 (1997); *Sony Music Entm't Inc. v. Does 1-40*, 326 F. Supp. 2d 556, 562 (S.D.N.Y. 2004).  Courts should quash a subpoena designed to breach anonymity where such anonymity is protected by the First Amendment. *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 118 (2d Cir. 2010) (citing Fed. R. Civ. P. 45(d)(3)(A)).

But "the right to speak anonymously, on the internet or otherwise, is not absolute and does not protect speech that otherwise would be unprotected." *Doe I v. Individuals*, 561 F. Supp. 2d 249, 254 (D. Conn. 2008) (collecting cases).  The right, therefore, "must be weighed against [the] need for discovery to redress alleged wrongs." *Id.*  In determining whether to quash a subpoena to preserve the objecting individual's anonymity, courts balance the following factors: "(1) the concreteness of the plaintiff's showing of a prima facie claim of actionable harm, (2) the specificity of the discovery request, (3) the absence of alternative means to obtain the subpoenaed information, (4) the need for the subpoenaed information to advance the claim, and (5) the objecting party's expectation of privacy." *Arista Records*, 604 F.3d at 119 (quoting *Sony Music*, 326 F. Supp. 2d at 564–65).

All five *Arista* factors weigh in favor of disclosure of Doe's personal identifying information.  First, Plaintiffs have made a sufficient showing of a prima facie defamation claim.  Defamation under New York law consists of five elements: "(1) a written defamatory statement of and concerning the plaintiff, (2) publication to a third party, (3) fault, (4) falsity of the defamatory statement, and (5) special damages or per se actionability." *Palin v. N.Y. Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019) (citing *Celle v. Filipino Reporter Enters. Inc.*, 209 F.3d 163, 176 (2d Cir. 2000)).  Plaintiffs allege that the defamatory articles contained statements concerning Plaintiffs

(*See* Compl. ¶¶ 27–36), were published on Medium and disseminated by Defendant to others in the EDM industry (*id.* ¶¶ 44–46), were made with malice to harm Plaintiffs (*id.* ¶¶ 27, 55), were false (*id.* ¶¶ 27, 32, 34, 36, 43), and are per se actionable because they tend to injure Plaintiffs in their trade and profession (*id.* ¶¶ 53, 56). These allegations, accepted as true, suffice at this juncture to establish a prima facie defamation claim.

Doe's arguments that the blog posts were aimed at Austin Kramer and that Plaintiffs have not established a presumption of damages are unavailing. (Doe's Reply 1–2.) While they may be aimed at Austin Kramer, the blog posts are undoubtedly of and concerning Plaintiffs because they refer to Plaintiffs by name and contain specific statements about them. *See, e.g.*, *Dalbec v. Gentleman's Companion, Inc.*, 828 F.2d 921, 925 (2d Cir. 1987) (alterations omitted) (noting that statement is "of and concerning" plaintiff if it "designates the plaintiff in such a way as to let those who knew the plaintiff understand that she was the person meant" (quoting *Fetler v. Houghton Mifflin Co.*, 364 F.2d 650, 651 (2d Cir. 1966))). And damages are presumed because the statements concern Plaintiffs in their trade, business, and profession and are therefore defamatory per se. (Compl. ¶¶ 53, 56.) *Zherka v. Amicone*, 634 F.3d 642, 645 & n.6 (2d Cir. 2011) (quoting *Liberman v. Gelstein*, 80 N.Y.2d 429, 435, 590 N.Y.S.2d 857, 605 N.E.2d 344 (1992)).[2]

Second, Plaintiffs' discovery request is sufficiently specific. The subpoena served on Verizon is limited to "information regarding the personal identifiable information of users of the

---

[2] With respect to the first *Arista* factor, the Court only considers arguments raised by Plaintiff, who, as the movant, bears the burden of persuasion. In finding that Plaintiffs' allegations establish a prima facia claim, the Court expresses no view as to whether the allegations in the Complaint would survive a motion to dismiss, pursuant to Rule 12(b)(6). As many courts have recognized, "the merits of a plaintiff's case should not be considered in the context of a motion to quash a subpoena." *Strike 3 Holdings, LLC v. Doe*, 18-CV-2648 (VEC), 2019 WL 78987, at *3 n.3 (S.D.N.Y. Jan. 2, 2019); *Lozada v. County of Nassau*, No. CV 16-6302 (JS) (AYS), 2017 WL 6514675, at *5 (E.D.N.Y. Dec. 20, 2017) ("In view of the sufficiency of Plaintiff's allegations in the context of the motion to quash, the broad ruling Defendants' seek as to the viability of [Plaintiff's] claims on the merits is inappropriate. Such arguments must await dispositive motion practice."); *see also TCYK, LLC v. Does 1-47*, No. 13-CV-539, 2013 WL 4805022, at *4 (S.D. Ohio Sept. 9, 2013) ("[A]rguments related to the merits of the allegations are appropriately addressed in the context of a motion to dismiss or a motion for summary judgment, rather than on a motion to quash." (citing *First Time Videos, LLC v. Does 1–500*, 276 F.R.D. 241, 250 (N.D. Ill. 2011))).

5

IP addresses identified in . . . [the] subpoena." (Order Oct. 29, 2020.) This "limited information is the bare minimum needed for Plaintiff to identify and effectuate service upon the Defendant." *Malibu Media, LLC v. John Doe Subscriber Assigned IP Address 24.90.139.137*, No. 15-CV-7788 (KMW), 2016 WL 1651869, at *2 (S.D.N.Y. Apr. 26, 2016) (citing *Malibu Media, LLC v. Doe*, No. 15-CV-2624, 2015 WL 6116620, at *3 (S.D.N.Y. Oct. 16, 2015); and *Malibu Media, LLC v. John Doe No. 4*, No. 12-CV-2950, 2012 WL 5987854, at *3 (S.D.N.Y. Nov. 30, 2012)); *see Doe I*, 561 F. Supp. 2d at 255 (holding that subpoena seeking "only the name, address, telephone number, and email address of the person believed to have posted defamatory or otherwise tortious content . . . [was] sufficiently specific").

Third, there are no viable alternative means for Plaintiffs to identify Defendant. Plaintiffs, through a comprehensive investigation, have traced Doe's IP address to a virtual private data network—effectively a dead end. (*See* Foley Decl ¶¶ 4–7; 18–22.) Several courts have held in similar situations that alternative practical means of identifying a Jane Doe do not exist. *Malibu Media, LLC v. Doe*, 14-CV-4808 (JS) (SIL), 2016 WL 4574677, at *7 (E.D.N.Y. Sept. 1, 2016) (collecting cases); *see Doe IP Address 24.90.139.137*, 2016 WL 1651869, at *3 (finding no other practical means of obtaining defendants identity where Plaintiff had only IP address); *Malibu Media*, 2015 WL 6116620, at *3 (same). Doe argues that Plaintiffs should investigate an anonymous Twitter account that republished the defamatory articles. (Doe's Reply 7–8.) But this is not a legitimate alternative to identify Defendant because Doe, who bears the burden on the present motion, has not connected the Twitter account to Defendant.

Fourth, the subpoenaed information is necessary to advance Plaintiffs' claim. If Plaintiffs are unable to identify and serve Defendant, this litigation will effectively terminate. *Strike 3 Holdings, LLC v. Doe*, 329 F.R.D. 518, 522 (S.D.N.Y. 2019) (citing *Malibu Media, LLC v. John Does 1-11*, 12-cv-3810 (ER), 2013 WL 3732839, at *6 (S.D.N.Y. July 16, 2013)); *see Sony Music*,

6

326 F. Supp. 2d at 566 ("Ascertaining the identities and residences of the Doe defendants is critical to plaintiffs' ability to pursue litigation, for without this information, plaintiffs will be unable to serve process.").

Fifth, Doe has no expectation of privacy under the circumstances. Verizon's Terms of Service prohibit subscribers from distributing defamatory material over the internet, and Verizon "reserve[s] the right to provide information about [the subscriber's] account and [the subscriber's] use of the Service to third parties as required or permitted by law (such as in response to a subpoena or court order)." (Foley Decl. Ex. E § 10.) Further, under its Privacy Policy, Verizon "may share personally identifiable information if it is required by law to comply with valid legal process." (Foley Decl. Ex. F at 14.) Thus, Doe "has little expectation of privacy in using [Verizon's] service to engage in tortious conduct that would subject him to discovery under the federal rules." *Doe I*, 561 F. Supp. 2d at 255. For similar reasons, Doe's invocation of the Fourth Amendment is unavailing. *See United States v. Ulbricht*, 858 F.3d 71, 97 (2d Cir. 2017) (holding that party has no "legitimate privacy interest" in "IP address routing information" under Fourth Amendment).

Doe provides no compelling basis to quash the subpoena. First, Doe's argument that her personal identifying information could be a false positive (Doe's Br. 4–5; Doe Reply 3–5) goes to her liability, not the propriety of the subpoena, and is therefore premature. *Strike 3 Holdings*, 2019 WL 78987, at *2; *John Wiley & Sons, Inc. v. Doe Nos. 1-44*, No. 12 Civ. 1568(WHP), 2012 WL 3597075, at *2 (S.D.N.Y. Aug. 21, 2012). This argument "may be advanced later as a defense, but it does not constitute a reason to quash the subpoena." *Doe IP Address 24.90.139.137*, 2016 WL 1651869, at *4.

Second, Doe accuses Plaintiffs of "unethical investigative tactics," specifically Plaintiffs' research into Doe's attorney. (Doe Reply 9–10.) In their opposition, Plaintiffs question the involvement of Doe's counsel in this case, claiming he "is close friends with two individuals who

are both heavily involved in the EDM industry, personally know the Plaintiffs in this litigation, and all three of whom live near one another in the same neighborhood in Queens in which the Verizon IP address is also located." (Pl.'s Opp. 6; Foley Decl. ¶ 10.)  Plaintiffs claim that one of those individuals was recently involved in an incident concerning "revenge porn" with a woman in the EDM industry.  (Pl.'s Opp. 7; Foley Decl. ¶¶ 11–12.)  The Court agrees with Doe that Plaintiffs ad hominem attacks directed at Doe's counsel are inappropriate and wholly irrelevant to the motion to quash.  But this sideshow has no bearing on the propriety of the Verizon subpoena because Plaintiffs have established the relevance of and shown a sufficient need for the information sought through the subpoena without reference to these matters concerning Doe's counsel.

Finally, enforcement of the subpoena would not violate the Telecommunications Act. (Doe's Br. 4–5.)  The Telecommunications Act expressly permits disclosure of a subscriber's personal identifying information if the disclosure is "made pursuant to a court order authorizing such disclosure, if the subscriber is notified of such order by the person to whom the order is directed." 47 U.S.C. § 551(c).  It is undisputed that Verizon notified Doe of the subpoena. (Doe's Letter Nov. 6, 2020.)  As such, the Telecommunications Act does not bar the Verizon subpoena.

Because all five *Arista* factors weigh in favor of Plaintiffs and Doe has not offered any other basis to quash the Verizon subpoena, Doe's motion to quash is DENIED.

## II. Request To Proceed Anonymously

Pursuant to Federal Rule of Civil Procedure 10(a), a "complaint must name all the parties." Fed. R. Civ. P. 10(a).  This Rule "serves the vital purpose of facilitating public scrutiny of judicial proceedings." *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 188 (2d Cir. 2008).  Put simply, "The people have a right to know who is using their courts." *Id.* at 189 (quoting *Doe v. Blue Cross & Blue Shield United*, 112 F.3d 869, 872 (7th Cir. 1997)).

"The central inquiry in determining whether a plaintiff may proceed [an]onymously is a balancing of a 'plaintiff's interest in anonymity against both the public interest in disclosure and any prejudice to the defendant.'" *Doe v. Delta Airlines, Inc.*, 310 F.R.D. 222, 224 (S.D.N.Y. 2015) (ellipsis omitted) (quoting *Michael v. Bloomberg L.P.*, No. 14 Civ. 2657(TPG), 2015 WL 585592, at *3 (S.D.N.Y. Feb. 11, 2015)). This is a "factor-driven balancing inquiry [that] requires a district court to exercise its discretion in the course of weighing competing interests." *Sealed Plaintiff*, 537 F.3d at 190 (outlining a non-exhaustive list of factors to be considered).

Doe argues, in conclusory fashion, that "[i]t is in the interests of justice and an equal and fair application of the law that Movant's personally identifying information be safeguarded in the litigation moving forward." (Doe's Br. 9.) In her declaration, Doe claims that that she has been "terrified of technology and having [her] personal information in the public sector" ever since her identity and $50,000 from her bank account were stolen in 2017 and that "[k]eeping her name and address private is very important to [her] for personal reasons." (Doe Decl. ¶¶ 7–8, 10.)[3] These general concerns of privacy do not outweigh the public interest in disclosure of Doe's name, assuming she is later named a party to this action. *See, e.g.*, *Doe v. Paychex, Inc.*, No. 3:17-cv-2031(VAB), 2020 WL 219377, at *10 (D. Conn. Jan. 15, 2020) (alterations omitted) (noting that even where plaintiffs assert "sensitive and personal privacy interests, courts have denied plaintiffs' motions to proceed anonymously where they 'do not assert that the disclosure of their names would subject them to retaliatory physical or mental harm'" (quoting *Doe v. Gong Xi Fa Cai, Inc.*, No.

---

[3] The Court granted Doe's request for leave to file an amended declaration, given Doe's representations that the first declaration, which was unnotarized and improperly signed, was filed in error and that Plaintiffs would not object. (Order Jan. 15, 2021 [ECF No. 18].) Thereafter, Plaintiffs suggested that Doe's amended declaration may have been backdated. (Pls.' Opp. 8; Pls.' Letter Jan. 21, 2021 [ECF No. 22]; *see* Pls.' Letter Jan. 21, 2021 Ex. B [ECF No. 22-2].) The Court does not address issues concerning the propriety of the declarations because the declarations have no effect on the Court's rulings.

19-cv-2678 (RA), 2019 WL 3034793, at *2 (S.D.N.Y. July 10, 2019))). Accordingly, Doe's request to proceed anonymously is DENIED.

## CONCLUSION

For the foregoing reasons, the motion to quash and request to proceed anonymously by nonparty Jane Doe are DENIED. Accordingly, Verizon may provide Plaintiffs with the personal identifying information of Jane Doe, subscriber assigned IP address 72.89.153.31. If nonparty Jane Doe is later named a party to this action, she will proceed under her real name. Plaintiffs shall file an amended complaint naming Defendant Jane Doe on or before August 12, 2021, and effectuate service on or before September 10, 2021.

The Clerk of Court is respectfully requested to terminate docket entry 15.

**SO ORDERED.**

**Date:  July 12, 2021**
**New York, NY**

*Mary Kay Vyskocil*
**MARY KAY VYSKOCIL**
**United States District Judge**